UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | |
|---|---|
| JOEY NIPPER, ) | |
| ) | |
| Plaintiff, ) | Civil No. 0:21-cv-00014-GFVT |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **&** |
| COMMISSIONER OF SOCIAL ) | **ORDER** |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Joey Nipper seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied his claim for disability insurance benefits. Mr. Nipper brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering his claim. The Court, having reviewed the record and for the reasons set forth herein, will DENY Mr. Nipper's Motion for Summary Judgment and GRANT the Commissioner's.

**I**

**A**

This matter arises out of Mr. Nipper's second application for disability insurance benefits. Mr. Nipper first applied for disability insurance benefits, alleging disability beginning on February 1, 2012, and an ALJ denied Mr. Nipper's application on June 1, 2016. [Transcript (hereinafter, "Tr.") 160–69.] Judge Henry Wilhoit affirmed that denial on September 21, 2017. [Tr. 275.] Here, Mr. Nipper applied for disability insurance benefits in September 2016 beginning February 1, 2012, and amended to the period between February 26, 2017, and September 30, 2017. [Tr. 279.] An ALJ denied Mr. Nipper's application on December 19,

Case: 0:21-cv-00014-GFVT   Doc #: 21   Filed: 06/08/22   Page: 2 of 19 - Page ID#: 1840

2018.  [Tr. 279–89.]  The Appeals Council remanded this matter for further proceedings on February 7, 2020, and on September 4, 2020, the ALJ once again rendered a decision concluding that Mr. Nipper was not disabled.  [Tr. 28–41; Tr. 296–300.]  On December 17, 2020, the Appeals Council denied Mr. Nipper's request for review, making the September 4, 2020, ALJ decision final.  [Tr. 1–6.]; 20 C.F.R. § 422.210(a).

      To evaluate a claim of disability for Title II disability insurance benefit claims, an ALJ conducts a five-step analysis.  20 C.F.R. § 404.1520.  First, if a claimant is performing a substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, he does not have a severe impairment and is not "disabled" as defined by the regulations.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled."  C.F.R. § 404.1530(d).  Before moving on to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual.  *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

      Fourth, the ALJ must determine whether the claimant has the RFC to perform the requirements of his past relevant work, and if a claimant's impairments do not prevent him from doing past relevant work, he is not "disabled."  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his RFC, age, education, and past work experience) prevent him from doing other work that exists in the national economy, then he is "disabled."  20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by [his] impairments and the fact that []he is precluded from performing [his] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving his lack of residual functional capacity. *Id.*; *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At step one, the ALJ found Mr. Nipper had not engaged in substantial gainful activity since the alleged onset date, February 26, 2017. [Tr. 31.] At step two, the ALJ found Mr. Nipper to suffer from the following severe impairments: "chronic kidney disease, osteoarthritis, major depressive disorder, post-traumatic stress disorder and social anxiety." [Tr. 31.] At step three, the ALJ determined that Mr. Nipper's combination of impairments did not meet or medically equal one of the listed impairments in C.F.R. Part 404. [Tr. 31.] Before moving on to step four, the ALJ considered the record and determined that Mr. Nipper possessed the following residual functioning capacity (RFC):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could occasionally climb ladders, ropes, or scaffolds. He could never work with his hands overhead. He should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. He could occasionally work at unprotected heights. He could understand and recall simple, familiar work instructions and procedures requiring brief learning periods of 30 days or less. He could sustain concentration, effort, and pace to complete simple familiar tasks requiring little to no judgment and involving minimal variation. He could frequently interact with supervisors and peers for task completion. He could occasionally interact with the public and could respond appropriately to changes in a routine work setting.

[Tr. 33.] After explaining the RFC, the ALJ found at step four that Mr. Nipper was not capable of performing past relevant work as a correctional officer. [Tr. 40.] At step five, the ALJ found

that "considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed." [Tr. 40.] Accordingly, the ALJ determined at step five that Mr. Nipper was not disabled since February 26, 2017. [Tr. 25.] Mr. Nipper filed this action for review on January 29, 2021. [R. 1.]

**B**

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319–20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high…It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citations omitted). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations.

4

*Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714 (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

## II

Mr. Nipper presents five arguments to this Court as grounds for relief from the ALJ's unfavorable decision. Specifically, he argues:

1. The ALJ failed to properly consider the opinion of the claimant's treating physicians;
2. The ALJ impermissibly reduced restrictions contained in a prior decision;
3. The ALJ failed to include all of the limitations assessed by non-examining consultants that the ALJ assigned great weight to;
4. The ALJ failed to properly consider third-party opinions; and
5. This case should be remanded pursuant to the sixth sentence of 42 U.S.C. § 405(g) for new and material evidence pertaining to the relevant time period.

[R. 16 at 1–2.] Each argument will be addressed in turn.

## A

Mr. Nipper first argues that the ALJ "failed to properly consider the opinion of the claimant's treating physicians," which include Dr. James Frederick, Dr. James Rice, and Richard Word, LCSW. [R. 16 at 2.] The ALJ gave each of these three providers little weight in her decision because each of their opinions was rendered "over one year after the claimant's date last insured"[1] and "is not supported by objective medical findings." [Tr. 39.] Although Mr. Nipper

---

[1] "The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through September 30, 2017 (hereinafter "the date last insured"). Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits." [Tr. 29.]

5

concedes that these providers offered opinions outside the relevant time period, he argues that Dr. Frederick and Mr. Word both "indicated that their opinions applied to the period prior to September 30, 2017," and because Dr. Rice is an orthopedist specialist, "his opinion deserved higher deference." [R. 16 at 2–3.] Mr. Nipper argues that because "the treating physician rule applies to the opinions of Drs. Frederick and Rice, a more thorough consideration of these opinions" is warranted. *Id.* at 6. Mr. Nipper also argues that the ALJ failed to accurately consider Mr. Word's opinion. *Id.*

The Commissioner argues that even under the treating physician rule, the opinions of Drs. Frederick and Rice are only entitled to controlling weight "if they were well-supported by medically acceptable clinical and laboratory diagnostic techniques" and did not conflict with other evidence in the record. [R. 20 at 8.] The Commissioner argues that the opinions are entitled to less weight because they were rendered more than a year after Mr. Nipper's date last insured, there is no evidence that either doctor examined Mr. Nipper before his date last insured, and their opinions "were not supported by objective medical findings from within the relevant period." *Id.* at 8–9. The Commissioner also argues that Mr. Word is not an "acceptable medical source" and therefore "the Court need only be able to follow the ALJ's reasoning for discounting his opinion." *Id.* at 9 (citing 20 C.F.R. §§ 404.1502(a)). The Commissioner argues that Mr. Word's opinion suffers from the same deficiencies as those of Drs. Frederick and Rice—they were rendered more than a year after Mr. Nipper's date last insured and conflicted with other evidence in the record. *Id.* at 9–10.

Under the treating physician rule, "the ALJ gives greater weight to medical opinions of physicians who have treated a claimant than to opinions of non-treating physicians, because treating physicians are 'most able to provide a detailed, longitudinal picture of the claimant's

6

medical impairments.'" *Tipton v. Comm'r of Soc. Sec.*, 847 F. App'x 290, 294 (6th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2)).[2] However, "the ALJ is not bound by a treating physician's opinion if there is substantial medical evidence to the contrary." *Id.* If the ALJ decides not to give a treating physician's opinion controlling weight,

> she must determine what weight to give it by looking at various factors, including the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the supportability of the opinion; its consistency with the record as a whole; the specialization of the physician or doctor rendering the opinion; and other factors that support or contradict the opinion.

*Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 505 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)(2)–(6)). Although not specifically part of the treating physician rule, but closely related to it, an ALJ must "always give good reasons" for the weight given to a treating-source opinion to "let claimants understand the disposition of their cases" and to "ensure[] that the ALJ applies the treating physician rule and permit[] meaningful review of the ALJ's application of the rule." *Hargett v. Comm'r of Soc. Sec.*, 964 F.3d 546, 552 (6th Cir. 2020) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)).

After review, the Court finds that substantial evidence supports the weight the ALJ gave the opinions of Drs. Frederick and Rice and Mr. Word. First, as the ALJ noted, the opinions of Drs. Frederick and Rice were rendered more than a year after Mr. Nipper's date last insured. [Tr. 39.] The Sixth Circuit has consistently held that an ALJ may discount a treating source's opinion on the basis that "the opinion was provided after the date last insured." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 850 (6th Cir. 2020) (citing cases). This is particularly true where, as Mr. Nipper admits, Dr. Rice did not even indicate that his opinions applied to the

---

[2] Here, the Commissioner does not contest that Drs. Frederick and Rice were Mr. Nipper's treating physicians. [R. 20 at 8.]

7

relevant time period, and the evidence suggests that neither Dr. Rice nor Dr. Frederick examined Mr. Nipper before his date last insured. [R. 16 at 3; *see also* Tr. 1067, 1181, 1221.] Although Dr. Frederick checked a box indicating that Mr. Nipper's limitations presented "on or before September 30, 2017, evidence does not suggest that Dr. Frederick, or Dr. Rice for that matter, examined Mr. Nipper before his date last insured.

In addition to the fact that the opinions of Drs. Frederick and Rice were rendered after the date last insured, the ALJ also found that they were "not supported by objective medical findings," and cited to numerous exhibits in the record. [Tr. 39.] Dr. Frederick found that Mr. Nipper, in an eight-hour day, could stand/walk less than two hours, sit for two hours, occasionally lift five pounds, could not frequently lift any weight, could occasionally use his right and left hands for repetitive actions, could never bend, stoop, balance, climb ladder, or climb stairs and would be absent from work for more than four days per month because of his physical ailments. [Tr. 1181.] Dr. Rice found that Mr. Nipper, in an eight-hour day, could stand/walk about four hours, could sit for about four hours, could occasionally lift eight pounds, could not frequently lift any weight, could constantly use his right and left hands for repetitive actions, could never bend, stoop, or climb ladders and could occasionally balance and climb stairs, and would miss approximately two days of work per month because of his physical ailments. [Tr. 1221.]

Contrary to the findings of Drs. Frederick[3] and Rice, the ALJ pointed to exhibits in Mr. Nipper's medical records demonstrating that physically, "[d]uring the relevant time period, examinations were normal except for findings of tenderness over the lumbar spine and knee and

---

[3] Mr. Nipper makes much of the fact that the ALJ failed to cite to Dr. Frederick's correct name, stating that "the ALJ did not even cite to the proper name." [R. 16.] It is true that the ALJ referred to Dr. James Frederick as "Dr. Frederick James." [Tr. 39.] However, this name transposition mistake on the ALJ's part is harmless error and does not affect the ALJ's findings or conclusions.

some limitation in the right shoulder range of motion."[4]  [Tr. 39; *see also* Tr. 832, 835, 839, 842, 865, 868, 1025, 1054–55.]  Examinations from before Mr. Nipper's date last insured, including from the stage agency medical and psychological consultants, support the ALJ's findings that Mr. Nipper could perform light work.  [*See generally* Tr. 240–43, 267–68, 817, 821, 824–25.]  To the extent Mr. Nipper argues that the records the ALJ cited to conflict with other records, it is not the Court's role to resolve conflicts in the evidence.  *Ulman*, 693 F.3d at 713.

The Court also finds that substantial evidence supports the little weight the ALJ gave to Mr. Word's opinion.  First, Mr. Word is a licensed clinical social worker and therefore not an "acceptable medical source."  *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 n.9 (6th Cir. 2016) (finding "even a licensed clinical social worker is 'not an acceptable medical source'") (quoting SSR 06–03, 2006 WL 2329939, at *1 (Aug. 9, 2006)).  While an ALJ "may use evidence from non-acceptable medical sources," such as opinions from registered nurses or clinical counselors, the ALJ is not required to articulate "good reasons" as to the weight assigned to those opinions.  *Duff v. Comm'r of Soc. Sec.*, 2015 WL 2250396, at *3 (N.D. Ohio May 13, 2015); *see also Brenneman v. Comm'r of Soc. Sec.*, 2021 WL 1176699, at *3 n.3 (N.D. Ohio Mar. 29, 2021).  When evaluating opinions from not acceptable medical sources or nonmedical sources, an ALJ should generally "explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  20 C.F.R. § 416.927(f)(2).

---

[4] The ALJ specifically addressed Mr. Nipper's hypertension, visual impairment, osteoarthritis, coronary artery disease, high blood pressure, and kidney issues and determined based on the medical record that these conditions were not severe or were under control during the relevant time period.  [Tr. 31–32.]

Here, the ALJ explained the little weight that he gave Mr. Word's opinion, finding that the opinion was given more than a year after the claimant's date last insured and "is not supported by objective findings during the relevant time period." [Tr. 39.] Mr. Word opined that Mr. Nipper had a good ability to maintain personal appearance and a fair ability to follow work rules, relate to coworkers, use judgment, interact with supervisor(s), function independently, demonstrate reliability, and understand and carry out simple job instructions. [Tr. 1267–68.] Mr. Word found that Mr. Nipper had a poor to no ability to deal with the public, deal with work stresses, maintain attention/concentration, behave in an emotionally stable manner, and relate predictably in social situations. [Tr. 1267–68.]

The ALJ's decision to give little weight to Mr. Word's opinion is consistent with the medical record, including the findings of consultative psychologist Dr. Genthner, who observed on October 18, 2016, that Mr. Nipper had fair judgment, insight, and memory, logical thought processes, and normal affect and speech. [Tr. 805.] The ALJ's decision was also consistent with the opinion of Dr. Wofford, a consultative physician who observed on January 21, 2017, that Mr. Nipper was "[a]lert and oriented to time, place and situation," did not appear "grossly depressed or anxious," was able "to communicate with no deficits," had intact [r]ecent and remote memory, and "[g]ood insight and cognitive function." [Tr. 825.] Therefore, the Court finds that substantial evidence supports the weight the ALJ gave to Mr. Word's opinion.

**B**

Next, Mr. Nipper argues that the ALJ "impermissibly reduced restrictions contained in a prior decision." [R. 16 at 6.] In a prior decision from June 1, 2016, the ALJ found that Mr. Nipper's "pertinent mental limitations" in his Residual Functional Capacity were such that he "should work in a non-public, object-oriented environment with only occasional and casual

10

contact with coworkers or supervisors." [R. 16 at 6 (citing Tr. 165).] Here, the ALJ found that Mr. Nipper's Residual Functional Capacity allowed him to "frequently interact with supervisors and peers for task completion. He could occasionally interact with the public and could respond appropriately to changes in routine work setting." *Id.* at 7 (citing Tr. 33). Mr. Nipper argues that "material evidence or changed circumstances must provide a basis for making a different finding of Residual Functional Capacity (RFC) in a subsequent application for benefits where there has been a prior final decision after a hearing with a finding of RFC." *Id.* at 6 (citing *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)).

The Commissioner argues that *Drummond* does not apply "when a claimant files a subsequent application for benefits for an entirely *different* time period." [R. 20 at 12 (citing *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018)).] The Commissioner argues that because Mr. Nipper has filed a separate application for benefits for a different period, the ALJ is entitled to give a "fresh review" of the record. *Id.*

The Court is persuaded by the Commissioner's argument. In *Earley*, the Sixth Circuit found that the finality of a prior disability benefit application "do[es] not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability." 893 F.3d at 931. Here, neither party disputes that this is an entirely different time period from Mr. Nipper's previous application for benefits. Furthermore, the ALJ's prior decision was issued June 1, 2016, and Mr. Nipper is now "alleging disability since the amended onset date of February 26, 2017." [Tr. 28.] A review of the record indicates that there was new evidence in this case from 2017, including additional treatment records and opinions from Drs. Genthner, Brake, and Bornstein, and the

ALJ was therefore permitted to "giv[e] a fresh look to a new application containing new evidence." *Earley*, 893 F.3d at 931.

As discussed *supra*, the ALJ's decision is consistent with evidence that was not previously available from consultative psychologist Dr. Genthner, who observed on October 18, 2016, that Mr. Nipper had fair judgment, insight, and memory, in addition to normal thought processes, affect, and speech. [Tr. 805.] Dr. Genthner also found that while Mr. Nipper "may have some difficulty with authority," his "capacity to relate to employers and coworkers" and "capacity to deal with the public" were only mildly limited. [Tr. 812–13.] The ALJ's opinion was also consistent with the opinion of Dr. Wofford, a consultative physician who observed on January 21, 2017, that Mr. Nipper was "[a]lert and oriented to time, place and situation," did not appear "grossly depressed or anxious," was able "to communicate with no deficits," had intact [r]ecent and remote memory, and "[g]ood insight and cognitive function." [Tr. 825.] Therefore, the ALJ was permitted to rely on new and material evidence, and the ALJ's Residual Functional Capacity finding as it relates to Mr. Nipper's interaction with others is supported by substantial evidence.

Furthermore, even if it had been error for the ALJ not to limit Mr. Nipper's interactions with people in formulating Mr. Nipper's Residual Functional Capacity, any error was harmless as it relates to the vocational expert's testimony. This is because the ALJ found that the specific light work jobs Mr. Nipper could perform, after hearing testimony from the vocational expert, were garment sorter (DOT No. 222.687-014), packager (DOT No. 559.687-074), and laundry worker (DOT No. 302.685-010). [Tr. 41.] These jobs all have a "People" rating of 8, which is "the lowest possible level of human interaction that exists in the labor force." *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016) (citation omitted). Mr. Nipper cannot demonstrate

that he would be unable to work these jobs even if the ALJ had further limited his interactions with others in the Residual Functional Capacity. Therefore, the Court finds that any failure on the ALJ's part to limit Mr. Nipper's interactions with people in his Residual Functional Capacity is harmless.

C

Mr. Nipper next contends that the ALJ failed to include in the Residual Functional Capacity all the limitations assessed by the non-agency consultants that she assigned great weight to. [R. 16 at 8.] Specifically, Mr. Nipper argues that Drs. Jane Brake and Michelle Bornstein both opined that Mr. Nipper is "expected to work better with things than people." *Id.* (citing Tr. 245; 270–71). While according great weight to the opinions of Drs. Brake and Bornstein, Mr. Nipper argues that the ALJ "neglected to include the limitation pertaining to Mr. Nipper's ability to work with things versus people." *Id.* Mr. Nipper argues that this oversight means that the RFC is incomplete and the "claim should be remanded to allow for vocational expert testimony in response to an accurate RFC, incorporating all necessary psychological and physical limitations. *Id.* at 9.

In response, the Commissioner argues that by finding that Mr. Nipper had the RFC to perform unskilled work, "the ALJ incorporated the consultants' opinion that Plaintiff was expected to work better with things than people." [R. 20 at 11.] Furthermore, the Commissioner argues that the fact that all three jobs the ALJ found Mr. Nipper could do had a "People" rating of 8 means that any error on the ALJ's part was harmless. *Id.*

The Court is persuaded by the Commissioner's arguments, and this argument fails for similar reasons as the argument discussed in section II.B *supra*. First, the regulations state that "[T]he primary work functions in most unskilled occupations relate to working with things

13

(rather than data or people)." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 202.00(g). Therefore, by limiting Mr. Nipper's work to three unskilled positions, the statement that Mr. Nipper worked better with things than with people was accounted for. Furthermore, as discussed *supra*, these jobs all have a "People" rating of 8, which is "the lowest possible level of human interaction that exists in the labor force." *Lane*, 643 F. App'x at 770 n.1. Therefore, even if the ALJ had included language limiting Mr. Nipper's contact to things more than people, the three identified jobs would still be available to Mr. Nipper. *Accord Haney v. Saul*, 2020 WL 10965122, at *1 (C.D. Cal. Feb. 18, 2020) ("Therefore, even if the ALJ included a provision in Plaintiff's RFC requiring limited interaction with supervisors, the jobs identified by the VE would remain viable."). Accordingly, the Court finds that Mr. Nipper's objection is without merit.

### D

Mr. Nipper next argues that the ALJ failed to properly consider third-party opinions. [R. 16 at 9.] This case was previously remanded, at least in part, so the ALJ could consider the third-party statement of Freda Taulbee, Mr. Nipper's mother. *Id.* (citing Tr. 299). Mr. Nipper argues that "the ALJ referred to exhibits that do not exist in this claim and summarily dismissed third-party opinions as inconsistent with the record without explanation or citation to demonstrate how Mr. Nipper's mother's opinion is inconsistent with the treatment record." *Id.* at 10. Mr. Nipper also argues the ALJ errantly referred to a report by Mr. Nipper's spouse, which does not exist, and never references the opinion of Mr. Nipper's mother. *Id.*

In response, the Commissioner argues that that "the ALJ explicitly discussed Plaintiff's mother's statement" and "found that the statement was inconsistent with Plaintiff's conservative treatment and objective medical evidence from within the relevant period." [R. 20 at 11.] The Commissioner concedes that the ALJ cited to the wrong exhibit number for Mr. Nipper's

14

mother's report but argues this is scrivener's error and is "irrelevant because the reasons given by the ALJ for discounting that statement remain supported by substantial evidence." *Id.*

The Court agrees with the Commissioner. First, the ALJ did specifically discuss Ms. Taulbee's statements, finding them to be "inconsistent with the claimant's treatment history from the amended alleged onset date through the claimant's date last insured." [Tr. 37.] And so long as the reasons the ALJ provides for discounting Ms. Taulbee's statements are supported by substantial evidence, the fact that the ALJ cited to the wrong exhibit numbers is harmless error. *See Williams v. Comm'r of Soc. Sec.*, 227 F. App'x 463, 464 (6th Cir. 2007) (finding citation to incorrect impairment listing to be harmless because it "did not in any way undermine the substance of the analysis or the conclusions reached by the ALJ"); *see also Gomez v. Saul*, 2020 WL 8620075, at *23 n.12 (S.D.N.Y. Dec. 23, 2020) (finding citation to incorrect exhibit to be harmless because it "appears to be a non-substantive typographical error"). Furthermore, substantial evidence supports the ALJ's finding that Ms. Taulbee's statements were inconsistent with Mr. Nipper's treatment history for essentially the same reasons as those discussed in section II.A *supra*.

As for the ALJ's statements regarding Mr. Nipper's spouse, although Mr. Nipper's spouse did not provide a Third-Party Function Report, Mr. Nipper referred to her and specific ways that she assisted him throughout his Function Report. [Tr. 471–80.] Furthermore, as the ALJ pointed out on multiple occasions in her decision, the medical records include a number of places in which Mr. Nipper's wife "dominated" evaluations and was "fairly insistent" on ensuring that her husband received certain medications. [Tr. 35.] These records support the ALJ's statement that the claimant's spouse opined that Mr. Nipper could no longer work.

Therefore, the Court finds that substantial evidence supports the ALJ's findings as to the third-party opinions in this matter.

E

Finally, Mr. Nipper argues that this case should be remanded so the ALJ could consider new and material evidence pertaining to the relevant time period pursuant to 42 U.S.C. § 405(g). [R. 16 at 10.] On August 5, 2020, Mr. Nipper "underwent an EMG and nerve conduction study (NCV) of the bilateral upper extremities." *Id.* The study demonstrated that Mr. Nipper "has severe sensorimotor axonal and demyelinating neuropathies affecting the bilateral median nerves of the wrists." *Id.* (citing Tr. 16). Mr. Nipper argues that this study, which occurred nearly three years after the relevant period, "shed[s] light on a condition that existed during the relevant period and should be considered to pertain to this claim." *Id.* Mr. Nipper highlights the following medical records:

- On May 3, 2016, Michael Myers, ARNP diagnosed Mr. Nipper with neuropathy of the bilateral wrists [Tr. 830];
- On February 10, 2017, Mr. Nipper complained of "burning and tingling in his hands" [Tr. 871];
- On May 3, 2017, Michael Myers noted that Mr. Nipper was receiving medications for peripheral neuropathy [Tr. 1022];
- Six months after the relevant period, Dr. Frederick assessed that Mr. Nipper had carpal tunnel syndrome [Tr. 1167].

*Id.* at 11. Mr. Nipper argues that this new study, in light of the medical evidence highlighted above, demonstrates that this matter should be remanded so the ALJ can "consider the impact of this study on Mr. Nipper's limitations and for vocational testimony regarding the impact of such limitations on the availability of jobs." *Id.* at 11–12.

In response, the Commissioner argues that remand is not appropriate, pointing to Mr. Nipper's testimony and the medical evidence. [R. 20 at 13.] The Commissioner specifically points to testimony in which Mr. Nipper stated he had no trouble using his hands in 2017 and

16

that his hobbies included playing video games on a gaming console and on his phone, both of which, the Commissioner argues, "require significant dexterity and use of the hands." *Id.* (citing Tr. 100–01, 125). The Commissioner also points to numerous exhibits in the medical record indicating that during the relevant period "[p]roviders consistently observed normal strength and sensation prior to Plaintiff's DLI." *Id.* at 14 (citing Tr. 679, 817, 821, 832, 835, 839, 842, 865, 1055).

Sentence six of 42 U.S.C. § 405(g) permits the court in its discretion to "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "To obtain a remand, the claimant must show that the evidence is 'new,' 'material,' and that there was good cause for failure to present it at the hearing." *Montecalvo v. Comm'r of Soc. Sec.*, 695 F. App'x 124, 130 (6th Cir. 2017) (citing *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)).

"[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 725 (6th Cir. 2012) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)). "To demonstrate materiality, Plaintiff must show that 'there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.'" *Montecalvo*, 695 F. App'x at 130 (quoting *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988)). To prove good cause, a Claimant must "demonstrat[e] a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ," which includes "detailing the obstacles that prevented the admission of the evidence." *Courter*, 479 F. App'x at 725 (quoting *Foster*, 279 F.3d at 357). Furthermore, "[t]he mere fact that evidence was

not in existence at the time of the ALJ's decision does not necessarily satisfy the 'good cause' requirement. This Court takes 'a harder line on the good cause test' with respect to timing and thus requires that the claimant 'give a valid reason for his failure to obtain evidence prior to the hearing.'" *Id.* (quoting *Oliver v. Sec'y of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir.1986).

Here, although the evidence is new, Mr. Nipper cannot satisfy the requisite materiality or good cause factors. Mr. Nipper testified on August 12, 2020, that he was not having any trouble using his hands in 2017. [Tr. 100.] This testimony is supported by the medical record, where providers consistently observed that Mr. Nipper had normal strength and sensation in his hands. [*See, e.g.*, 679, 817, 821, 832, 835, 839, 842, 865, 1055.] Furthermore, consultative physician Dr. Wofford examined Mr. Nipper in 2017 and found that he showed full grip strength (5/5) and demonstrated adequate fine motor movements, dexterity, and the ability to grasp objects with both of his hands. [Tr. 825.] To the extent Mr. Nipper complained of numbness and tingling in his hands in 2017, he attributed these sensations to "stopping Xanax," not to another underlying medial condition. [Tr. 871.] Furthermore, Mr. Nipper was not diagnosed with carpal tunnel syndrome until March 2018, which is six months after the relevant period ended. [Tr. 1167.] Therefore, given the fact that this study was not undertaken until nearly three years after the relevant time period, and in light of the medical evidence from the relevant time period, there is not a reasonable possibility that the Secretary would have reached a different conclusion as to Mr. Nipper's claim if she were presented with the new evidence. *Montecalvo*, 695 F. App'x at 130.

In addition, to satisfy the good cause prong, Mr. Nipper would have needed to "detail[] the obstacles that prevented the admission of the evidence," and "give a valid reason for his

18

failure to obtain evidence prior to the hearing." *Courter*, 479 F. App'x at 725. The fact that the evidence was not available to the ALJ at the time of her decision does not, in and of itself, satisfy the good cause requirement. *Id.* Here, Mr. Nipper's study occurred on August 5, 2020, which was "just a few days prior to the hearing." [Tr. 16 at 10–11.] Mr. Nipper states that "[r]ecords were obtained and submitted as timely as possible," but he fails to explain why the study could not have occurred earlier and failed to "detail[] the obstacles that prevented the admission of the evidence" as required. *Courter*, 479 F. App'x at 725. Therefore, the Court finds that Mr. Nipper failed to satisfy both the materiality and good cause factors.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Joey Nipper's Motion for Summary Judgment **[R. 16]** is **DENIED**, and the Commissioner's Motion for Summary Judgment **[R. 20]** is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 7th day of June, 2022.

Gregory F. Van Tatenhove
United States District Judge